Mr Justice Watne
 

 delivered the opinion of the Court.
 

 The object of this writ of error is to reverse a judgment of the circuit court of the District of Columbia, for alleged error in having adjudged the defendants in. error (coloured persons) to be free and discharged of and from the service of the plaintiff in error.
 

 The judgment of the court was rendered upon á statement of facts entered into at the trial term of the cause, signed by the counsel of the parties.
 

 It is necessary, however, to set out the facts in the case more in detail, as they appear by the record of the proceedings in the cause.
 

 Eliza Chapman and Robert Chapman, infants and coloured ■ persons, by their mother and next friend, claiming to be free by the laws of the land, allege that they are illegally detained and confined in custody, by one Robert Fenwick, who sets lip some pretended claim or title to them, as his slaves for life. They pray that a subpoena may issue to the marshal of the District of Columbia, commanding him to summon the said Robert Fenwick to be and appear before the judges of the circuit court of the District of Columbia for the county of Washington, to answer the allegation of the petitioners in the premises. The subpoena was issued; and on the day of the return of it, the defendant appeared by his attorney, and in his plea denied that the petitioners were entitled to their freedom, as alleged; and put himself upon the country.
 

 Before the trial of the issue, by consent of all parties, one Richard J. Edelin was admitted as a party defendant: he being the executor of the last well and testament pf Frances Edelin, deceased, late of Prince George’s-county, Maryland; and hav
 
 *467
 
 ing, as such, sold the petitioners to the defendant Robert Fen-wick, as. the executor contends, in-virtue of an order of the orphan’s court of Prince George’s county, to sell all the personal estate of Frances Edelin. This order was made upon, the petition of the executor, dated 16th July 1833 ; in-which he states that Frances Edelin, by her will, had' directed' that certain negroes should be free at her.death; anduhat he had discovered there were not assets enough, independent of those negroes, to discharge the debts of the testatrix.
 

 The executor had included the negroes manumitted, by the will in'an inventory and appraisement of the personal estate of the testatrix, returned by him to the orphan’s court on the 17th. .of January 1826. The will is dated the 2d day of November < 1825. The testatrix died before the 8th day of December of the same year; and immediately after her death, the defendant, Richard, J. Edelin, took upon himself the burthen and execution of her will. .
 

 The testatrix begins her will in the following words:
 
 “
 
 In the name of God, amen. I, Frances Edelin, of Prince George’s county, in the state of Maryland, being of sound and disposing mind, memory and understanding, do make and publish this, my last will and testament, in manner and form following. First, and principally, I commit my soul to the mercies of my dear Redeemer and Lord Jesus Christ, and my body to the earth, to be decently buried;
 
 and after my debts and funeral charges are paid, I devise and bequeath as
 
 follows.” Then follow sundry devises and specific legacies ; and so mulch of the' will relating to the freedom of the- defendants in error, and t.o' the other persons manumitted by the will, is in.these words : “ Item, I give and bequeath to my nephew Richard James Edelin, the small house and lot now occupied by Robert Frazer, which I give to him, his heirs and assigns for ever, with this proviso, that the negroes which are hereinafter mentioned to be free to live in the back room of said house.” “ Item, negro woman Letty, her daughter Kitty, a mulatto, with her three children, to wit, Eliza, Robert and Kitty Jane, with their future increase, and an old woman named'Lucy, I do hereby declare them free at and after my death, and they shall have the right to live in and occupy the back room in the house and lot I give and bequeath to my nephew Richard James
 
 *468
 
 Edélin. To the two Old negro women, I give them and' bequeath 10 dollars a year to each of them as long as they live ; and 10 dollars a year, during two years after my death, exclusive of the year in which I die, to mulatto Kitty. Item, my "three nephews, John Aloysius, Richard James and Walter Alexander Edelin, for and in consideration of the bequests I have made them, shall pay every year to negro woman Lucy and to negro woman Letty, 10 dollars for every year the said negro women may live, as mentioned in the aforegoing item ; and my nephew John B. Edelin, for and in consideration Of the bequests I have left him, shall pay, during the two years above mentioned, to mulatto Kitty, 10 dollars for each year.”'
 

 The law of Maryland permitting the manumission of slaves by will, is in these words ; act of 1796, ch. 67, sec. 13 ;
 
 “
 
 that from and after the passage of this act, it si all and may be lawful for every person or persons, capable in law to make a valid will and testament, to grant' freedom to and effect the manumission of, any slave or slaves, belonging to such person or .persons, by his, her or their last will and
 
 testament;
 
 and such manumission of any slave or slaves, may be made to take effect at the death of the testator or testators, or at such other periods as may be limited in such last will and testament, provided always, that no manumission hereafter to be made by last will and testament, shall be- effectual to give freedom to any slave or slaves, if the same shall be in prejudice of creditors, nor unless the said slave or slaves shall be under the age of forty-five years and able to work and gain a sufficient maintenance and livelihood at the time the freedom-given shall commence.”
 

 The agreement or statement of facts entered into between the counsel of the parties, at the trial term of the cause, and upon which the judgment of the court was given, is as follows.
 

 .1. That the petitioners are the same named in the will of Frances Edelin, deceased ; tó whom she gave their freedom, after her death, as appears by said will, a copy whereof is hereto annexed.
 

 2. That Edelin, the defendant, was the executor of the last will and testament of said deceased, and, as such, sold, in the year 1833, said petitioners to the other defendant Fenwick.
 

 3. That the sale of the petitioners was made in Prince
 
 *469
 
 George’s county aforesaid, where the deceased lived at- the time of her death, and where the petitioners were; and that, from the time of deceased’s death to the time of.their sale, they were permitted by the executor to go at large as lree; and that after the purchase, made by Fenwick, he brought them to the District' of Columbia, where the present suit was instituted ; and that, after the institution of the said suit, Fenwick transferred his claim to the petitioners to the defendant Ede-lin, who repaid him his money, and appears to defend the suit.
 

 4.'. That the deceased left real, estate to an amount in value, more than sufficient to pay her debts, without the sale of the negroes emancipated by the will,- as will appear by her will referred to, and made a part of this agreement; but not personal estate sufficient.
 

 5. That the original copy of all the proceedings had in the orphan’s court of Prince George’s county, relative to the settlement of deceased’s estate, by her executors or administrators, may be filed as .a part of this case.
 

 Under the aforegoing circumstances, the statement of facts entered into by the counsel of the parties, and the la\v of Maryland permitting the testamentary manumission of slaves when it. is not done “in prejudice of creditorsthe question to be decided is, were the defendants manumitted in prejudice of creditors? And we will first'consider it by inquiring what effect the words in the will,
 
 “and after my debts and funeral charges are paid, I devise and bequeath as follows,”
 
 have'to charge tli.e real estate of the testator with the payment of debts, in the event of there not being a sufficiency of personal estate to pay them, without the manumitted slaves. Without any construction of our own upon these words, the effect of them to charge the real estate is settled by decisions which are uncontested and cannot be controverted.
 

 In the case of Kidney v. Coussmaker, T. 1793, 1 Ves. Jun.
 
 267,
 
 it is said, “after paying debts,” amounts to a charge upon á real estate ; for which very little is sufficient.-
 

 In Newman v. Johnson, E. 1682, 1 Vern. 45. “My debts and legacies being first deducted, I devise all my real and personal estate to J. S.” These words were said to amount to a devise to sell for payment of debts.
 

 
 *470
 
 A devise of land after payment of debts, is a charge on the land; for, until debts paid, testator gives nothing. 3Ves. 739.
 

 In the case of Trott v. Vernon, 2 Vern. 708, the testator willed and devised, that his debts, legacies and funerals should be paid in' the first place, and then devised his land to his sister for life, with remainder to her issue — remainder over, and .made, the sister executrix; it was decreed that the lands be charged with the debts. The lord chancellor said, it was but'natural to suppose, that all persons would provide for the payment of their just debts; and, directing them to be paid in the first place, imports, that before any devise by his will should take place, his debts, &c., should be paid. See cases,
 

 Ca. temp. Talb. 110; 3 P. Wins 95; 1 Ves. Sen.
 
 499;
 
 2 John. Ch. 614; for the same doctrine.
 

 And in the case of the Earl of Godolphin v. Pennock,
 
 2
 
 Ves. Sen. 270, it was held that real estate was charged for the payment of debts, under a general clause in a will, that 1 debts should be first paid and satisfied. Though cases both before and after it can be found of a contrary character, yet that such a general clause will charge real estate, has been always held. In the case before us, the word “ after” implies, as strongly as any word in the English language can do, that the payment of debts is á condition precedent to the absoluteness of any entire devise in the will. A contrary doctrine seems to have been held in Davis v. Gardiner, 2 P. Wms 189, and it was so held under the devise in that case; but the lord chancellor, in his decision, admits that the real estate would have been charged in a case, which is, indeed, the case under the will of Frances Edelin. He says, “ I admit the portions might be charged on the real estate, had the devise of the land been to the son in fee absolutely; for without such construction, the devise would have been void, and the son would have taken the land by descent. So that the will must, in such a case, have signified nothing as to the land, unless it were to operate so as to charge the land with the legacies, and to intimate that the heir was not to take it until after the legacies paid.” And there is no ■difference, in the rule of construction, between legatees and creditors.
 

 But leaving out of view the words in the will, “ and after
 
 *471
 
 my debts and funeral charges are paid, I devise and bequeath as follows,” and the authorities which have been cited to show that they make a charge upon the real estate for the payment of debts; would there not be a charge upon the real estate for the payment of debts, if it be manifest from the will, that it was the intention of the testatrix, that thé manumitting clause in her will was to take place, or to have effect at all events
 
 1
 
 The general rule is, that the personal estate, of a testator shall, in all cases, be primarily applied in the discharge of his personal debts or general legacy, unless he by express words or
 
 manifest intention exempt it.
 
 Bac. Abridg. tit. Executor and Administrator, L. 3. The testator may exempt a part of it, by making it a particular legacy ; or the whole of it, either by express words, or plain manifest intention, or by giving it as a specific legacy. Adams v. Meyrick, 1 Eq. Ab. 271, pl. 13; Bamfield v. Wyndham, Pre. in Ch. 101; Wainwright v. Bendlowes, Pre. in Ch. 451; Amb. 581; Stapleton v. Colville, Ca. temp. Tal. 202; Phipps v. Annesley, 2 Atk. 58; Ancaster v. Mayo, 1 Bro. Ch. Ca. 454 ; Webb v. Jones, 2 Bro. Ch. Ca. 60; Burton v. Knowlton, 3 Ves. 107
 
 ;
 
 Milnes v. Slater, 8 Ves. 305.
 

 In Jones v. Selby, H. 1709, Pre. in Ch. 288, it is said, “ where the testator’s intention clearly appears that a legacy should be paid at all events, the real estate is made liable, on a deficiency of personal assets.” That such clear intention of the testator will charge the real estate is also decided by authority. Was it clearly .the intention of the testator that these defendants should be free at all events, as far as she bad power to make them so, under the law of Maryland
 
 %
 
 We think it was: and the conclusion is sustained by the words.of the manumitting clause of the will, by the provision which she makes of a place for. their residence, by the annuities which;are bequeathed to some of them, the manner in which they are made, and above all, we say, by
 
 the nature of manumission itself.
 
 After naming the slaves, her language is,
 
 “
 
 /
 
 do hereby declare them free at and after my death, and they shall have the right to live in, and occupy the back room in the house and lot I give and bequeath to my nephew Richard James Edelin."
 
 And the devise of that house and lot to Richard James Edelin (the now plaintiff in error) is made with “
 
 this proviso, that the negroes which arc hereinafter mentioned to be free
 
 
 *472
 

 to live itl the back room of said house.”
 
 In confirmation, too, of its having been the intention of the testatrix, that these'negroes were to be free at all events, it is worthy of remark, that the effective words of manumission are in strict conformity with, or a repetition in part of, these words in the statute of Maryland ; “
 
 and such manumission of any slave or slaves may be r^ade to take effect at the death of the testator.”
 
 But the testatrix, after ■ declaring these negroes to be free at and after her death, provides for them a residence; and the measure of her benevolence being unexhausted, she bequeaths to some of them annuities or pecuniary legacies; two of them as charges upon her estate, and ,the rest she directs to be paid by her devisees and nephews, in consideration of the- bequests she had made to them. Can it be supposed by any one, that such provisions would" have been made by the testatrix for these manumitted slaves, if it had not been her intention that .they should be free at,her death, at all events 1 We think no one will answer the inquiry in the negative. But without such assistance from a will to collect the intention of a testator, the nature of the thing directed -to be done may clearly show an intention that it is to be done at all events, so as to make real estate liable for payment of debts on a deficiency of personal assets. As, for instance, when the thing to be done cannot be partially performed by the executors, without defeating altogether the intention which directs it, and the thing itself. Manumission, to take effect ¿U the death of a testator, is of that character. What is manumission.? It is the giving of liberty to one who has been in just Servitude, with the power of acting, except as restrained by law. And when this liberty is given in absolute terms by will, under the law of Maryland, it can only be defeated by the person conferring it, having done it in prejudice of creditors, or by the slave standing in thé other predicament of the law, of being over forty-five years of age, and being unable to work and gain a livelihood at the time the freedom given shall commence.
 

 But what meaning shall be given to the words" of the statute of Maryland,- “ that no manumission hereafter to be made by last will and testament shall be effectual to give freedom (o any slave or slaves, if the same
 
 {shall be in prejudice 'Of creditors V ”
 
 It is, that the manumillor must not be insolvent; that a creditor of the testator shall not be deprived in reality of his
 
 *473
 
 debt!, by the manumission. Any other construction in favour •of 'the creditor, from any right to personal assets for the payment of debts, of the executor’s obligation so to apply the whole of them, or in favour of the creditor’s remedy at law to have the personal assets applied to the payment of his debt, including manumitted slaves, when the other personal estate.is not enough to pay all debts, or against his being carried into a court, of equity, to make land liable for his debt, when the personal assets have been exhausted, exclusive of manumitted slaves: any other construction than .that which has been given to the words “in prejudice of creditors:” would interfere with the right of a testator to make his real estate chargeable with the payment of debts, when he manumits a slave; and would there-fore confine effective manumissions to those cases in which a testator leaves personal property enough, besides the manumitted slaves, for the payment of his debts, or when he dies owing no debts. It would also, so far as the creditor’s remedy at law, or his not being carried into a court of equity are concerned,be equivalent to a denial of a testator’s right to make a specific' legacy of all his slaves, and to charge the payment of his debts exclusively upon his land. . The first is not in conformity with the statute of Maryland ; and the second, no one will deny to be a testator’s right. The statute is a privilege to all persons, capable, in law, to make a valid will and testament, to grant, freedom to, and effect the manumission of any slave or slaves, belonging to such person or persons, by will and testament; and it'may be made to take effect at the death of the testator or testators, if the saihe-sball not be
 
 “
 
 in.prejudice of creditors.” Now, can the construction of that statute be, .that the testatór is limited to the manumission of slaves, only in the event of his having other personal property sufficient to pay debts ;1 or to deny to him a right, when he manumits, to do what he could have done before the statute was passed, and what it must be admitted he can still do — to make all of' his slaves, a specific legacy, and to charge his land with the payment of his debts, even though he may have, at the time of his death, no other-personal property than slaves. But in opposition to the protest against any interference with a creditor’s right to'have a remedy at law to enforce the payment of his debt out of the personal assets, and against his being carried into acourt of equity to make
 
 *474
 
 the land liable, when, by the manumission of slaves, the.other personal assets shall be insufficient to pay his debts; if is sufficient to say, that he holds this right in all cases at the will of a testator, and in many cases subject to the dubious expression of a testator’sintenticn. The creditor maybe carried intoa court of equity, or voluntarily resort to it to obtain ljjs debt., either from the lands or the personally : when the testator leaves it doubtful from what, funds his debts are to be paid ; or when the executor doubts, from the will, or the indebtment of his testator,, how assets are to be applied, or whether the land is not chargeable with the payment of debts, or whether the whole of the personal estate has been left as a specific legacy ; or when the specific legatee of a part contends for. the payment of debts out of the real estate; and in many other instances, with this of manumission added to them ; when the personal property, besides, is insufficient to pay debts ; on account of its reasonableness, and because (he legislative intendment of the statute of Maryland, allowing-freedom to be given to slaves by will, might be defrauded in the greater number of cases, if a creditor was not required to' go into equity to obtain bis debt by a sale of the testator’s land.
 

 This construction, too,- of the words “ in prejudice of creditors,” and of a creditor’s obligation to go into a court of equity, is in exact conformity with that indisputable rule in equity; that, where one claimant has more than one fund to resort to, and another'claimant only one, the first claimant shall resort to that fund on which the second has no lien. Lenox v. Duke of Athol,
 
 2
 
 Atk. 446; 1 Ves.
 
 312
 
 ; Mogg v. Hodges.
 
 2
 
 Ves. 53 ; Trimmer v. Bayne, 9 Ves. 209.
 

 With this rule in view, see, by a course of short reasonings, how absolute its application is to sustain the correctness of our construction of the. wcjrds in the statute, “in prejudice of creditors,” and of a creditor’s obligation to go into equity^in a case of manumission, after other personal assets are insufficient to pay debts.
 

 Manumission is. good by the act of Maryland, 1796 ; ch. 67, sec. 13; if it b.e notin prejudice of creditors. If ample funds exist, and they are accessible, by the laws of Maryland, to the crediiors, they cannot be prejudiced.
 

 Lands devised for the payment/of debts, or which -have be
 
 *475
 
 come chargeable-by implication, constitute a fund for the payment of debts; and an ample and plain remedy is admitted to,.exist, in the laws of Maryland, so. to apply them. How then are creditors prejudiced, if the land liable, in a case of manumission, is sufficient to pay all of a testator’s debts ?
 

 As to anrexecutor’s obligation'to apply personal assets to the payment of debts, not specifically bequeathed Or manumitted, an opposite construction to that which has bSen given to the words “ in prejudice of creditors,” would be to make him master of the rule directing the application.of assets; and in all. cases of manumission, would place it in the executor’s power to postpone or defeat the testator’s intention in that regard. The will is the executor’s law, and he is no more than the tds-tator’s representative in all things lawful in "the will. A specific legacy of all the personal property is a' law to him- The manumission of all the slaves of his testator, if,he leaves-no • other personal property to pay debts, and if it be made in a way to charge real estate with the payment of all debts ;is equally, his law. ■ In a case of manumission and insufficiency of other. personal assets to pay debts, it is the duty of an executor to file his bill against the creditors and all interested in the' estate; placing the manumitted.slaves in the guardianship of the chancellor, and praying that the lands may be made liable to the payment of debts ;. that equity may bé done to all concerned, according to the law of equity. If an executor withholds freedom from manumitted slaves, thq slaves may prefer-their petition at law against the executor, or against any persop holding them under him, and they may recover their freedom by a judgment at law, though the question raised by the plea is,that the manumission has been made in prejudice of creditors. And the-slaves may do this.upon the principle that a ¡matute never gives a right without providing a remedy; in the absence of such provis’-.n, contemplating that there is a legal remedy to secure it. If an executor permits manumitted slaves to go at large and free from the death of the testator, it is an assent to the manumission, which he cannot recall any more than he can, after assenting to a legacy, withdraw that assent. ■
 

 Nor can he deprive the manumitted persons of their liberty by the order of an orphan’s court in Maryland for the sale of all the persona] properly of his testator; upon a suggestion that,
 
 *476
 
 besides~'the manumitted slaves, there is not enough personal property^ to pay debts; that court having no jurisdiction, by the laws cf'Máryland,' to try the question of freedom. And if, by such order, they have been sold by the executor, they may sue for their freedom in a suit at law, against the. purchaser, or against'any other person holding them in slavery.
 

 The-decision in the case from
 
 2
 
 Harr, and Gill 1, of Negro George et al. v. Corse’s Administrator, was urged in argument in. opposition to the opinions just expressed. In that case the petitioners claimed their.freedom in virtue of the will and testament of their master James Corse; The manumitting clause of the will gives freedom to some of the slaves at the testator’s death, and to others when they shall have arrived at particular ages; and the testator further says, if his personal éstate, exclusive of the negroes, should not be sufficient to discharge all his just debts, “ then my will is, that my executor or" administrator, as the case may be, may sell so much of my real estate as will pay my debts, so as to have my negroes free, as before stated.” The testator makes specific dévises of real estáte in fee to-his son, and devises and bequeaths to his brother U. Corse, the residue of his estate, both real and.personal, with the-unexpired time of the negro girls and boys, as designated in the first clause of the will; and he appointed U. Corse executor.
 

 The case was submitted to the jury in the Kent county court, upon a statement of facts; and with instructions from the judge, that if the jury believed the facts, they must find a verdict for the defendant. .The. verdict and judgment 'being against petitioners', they appealed. In the statement of facts, it is admitted that the personal estate of the testator, either including or excluding his negroes,, was not, at the time of the execution ,of his will, nor at any time after,- sufficient to pay his debts
 
 ;
 
 but that his real estate, exclusive of the negroes, was sufficient to pay all his just debts and funeral charges. Upon the appeal, three judges decided to affirm the judgment upon the ground, “ that the question of the existence of a sufficiency of real assets to pay the debts of the testator, never can be tried on an issue between the executor or administrator only, without ‘ prejudice’ to creditors. That it was an issue to which the creditors were no party, and to protéct whose interest no
 
 *477
 
 body appears.” And the court further says, the admissions • made by the appellee, he was unauthorized, to make; and the court was incompetent to pass judgment upon the facts they contained; not being matters in issue.in the cause. The court also say,, “as far as relates to the persoualty, the executor or administrator is competent to act for all concerned ; but in trying the facts whether there be assets by descent in the hands of the heir, and what is the amount thereof, he. has no interest, either personally or in right of representation.”' With all respect for the judges deciding that cause,- these opinions.cannot command-our assent.
 

 We think with Judge Cráncb,' and use his language in regard to that decision, when he gave hié opinion in the circuit court in this ease. The judge says, “ when lands are devised to the executor, to be sold for the payment of debts, as when the lands are charged for the payment of the debts and- a . power is given to the executor to sell them ; the ifands are as much a fund in his hands for that-purpose, as the goods and chattels; and he represents the creditors in regard to the lands, so far as their interests are concerned, as much as he .does in regard to .the personal estate; and the creditors are as much a party in the issue in respect of the lands, as they are in respect of the goods and chattels. When he is- charged with the sale of his testator’s lands, for payment of debts ; he is as much bound to inquire in regard to the lands,vas he is in regard to the personal estate. For it is his dufr *p execute the whole of his testator’s will; and, in such a case, the creditors have as good a right to look-to the land, through him, for the •payment of those debts, as they have to look to the goods and chattels, through him.” ■ To these remarks we. add; it is well settled, that executors have power to sell the ’•eal estate, .where such power is given to (hern,-or necessarily to be implied from the produce beingto pass through theirhands in the execution of their office. Bentham v. Wiltshire, 4 Mad. 44 ; Jac. and Walk. 189. And in V. Abr. 920, Hawker v. Buckland, 2 Vern. 106, it is.said, “ifamandevise landsto besold-by one for paymentof his debts and legacies, and make the same person nis executor, the money made by such person, upon the sale of the land, shall be assets in his hands.” Now if, in case of such a devise, the executor can sell, and does sell, bona fide; and by doing so can de
 
 *478
 
 prive the creditors from all claim upon the land; substituting the price of it as assets — doing this without in any way consulting the creditors, and in virtue-o’f the devise for that purpose: why may not the executor admit, in a- suit at law between himself and another, that the land devised is sufficient to pay debts, though such an admission may release a part of the personalty, by the judgment of a court, from any future liability at law for the debts for his testator
 
 1
 
 Why should it be, that the value of lands so devised for the payment of debts, can only be ascertained when creditors are a party to the proceedings ; when they have no legal concern in fixing the price for which the executor may sell the land; and when, moreover, if it be necessary to obtain, as it is in some cases, an order of a •court of equity to sell the land, the creditors need not be made parties to the application. Their claim is upon the assets made by the sale of the land. It is true, creditors may, for cause, enjoin the executor from selling; or, upon his application to sell, in a case where the intervention of a court of equity is asked to permit or direct a sale, creditors may be allowed to make themselves parties : but the difference between these last positions; and the executor’s right to sell, and having sold; is all that there is between the action of the executor being restrained by a court of equity, and where his power to sell has not been restrained, and is executed;
 

 Suppose in a case of a devise to sell land for the payment of debts,' as in the case of George v. Corse, that the administrator had admitted assets from the sale of the land, without stating the amount, but sufficient to pay debts, and without stating the amount of the debts due by the testator; could the court, in the face of the admission, have conjectured it might be in prejudice of creditors, and, upon such conjecture or apprehension, have given judgment that it was in prejudice of creditors. Or suppose the administrator had, in his admission, stated both the amount of the assets and of debts, the former being larger than the latter ; would it not have given judgment, that the manumission had not been made in prejudice of creditors, and have done so upon the executor’s admission
 
 1 •
 
 The court could not, in such an issue, have given to the creditors any more protection than they had by the administrator’s admission; it could not have possessed itself of the assets, or in any way
 
 *479
 
 have directed the distribution of them. It was powerless to call upon the executor fora scheddle .of debts, or upon the' creditors to make an exhibition of their claims. But it may be said, the difference in the case supposed, and that which existed, is: that in the first, the assets-were in hand; and in the • other were to be made by a sale of the land. ■ The difference makes nothing against the argument, for the value of the land can be as well ascertained by proof, as it can be by the executor’s sale; aiid when he admits the value tobe sufficient to pay debts, he does, in truth,'do no more .than is done when he admits the existence of a sufficiency of personal assets, but unsold, to pay debts;
 

 As between himself and. another; his admission may surely bind him in that other’s favour ; ás well in regard to assets to .be made from land, as in regard to personal assets undisposed of. In the latter case, there is as much a question of the sufficiency of assets, as there is in the case when assets are to be made by the sale of land; and so far as creditors are concerned, in a case of manumission, the .reason for not trying the issue between a petitioner and' an executor, is as strong in an inquiry of a sufficiency of personal assets, as in one of real assets.And the court., in the case under remark, only excludes an inquiry into the value of the latter; and if it did not intend to do so, then a manumitted slave can never show that the manumission was not made in prejudice of creditors.
 

 The court thought it was an issue to the prejudice of creditors, as they were no party to tlie .proceeding, and to protect whose interest no one appeared ; and “ thus the judgment of the court, having once given effect to the manumission, on the ground that effects in the hands of the heir should be applied to the payment of the debts, the executor or administrator is absolved from all responsibility, except as to the residue of the personalty, and the creditors would be left to seek, through a court of equity, real assets which perhaps never had existence.” But the mistake is in stating the land devised to an executor 'to be sold for the payment of debts to be assets in the Hands of the heir; and that the judgment between the then petitioners and administrator, would have been conclusive ' against creditors as well in equity as at law. The assets were not legally.in the hands of the heir; nor would the judgment
 
 *480
 
 have concluded the right of the creditors from showing,' in a proceeding in equity, to which the manumitted slaves; the executors and all persons interested had been made parties, that the admissionof-the executor had.been made without any foundation in fact, or in fraud or mistake; and upon showing either, in an entire reviewof the administration, a court of equity would set aside the judgment at law, and decree that the manumission had been made in prejudice of creditors, and subject the slaves to the payment, of debts, either by sale for life or'fot; a term of years; according as the oneor the other mightbe requisite to pay the creditors. Such a course would trerin perfect harmony with the statute allowing manumis&otas to be made by will. They may be made to
 
 take effect at the death- of the testator,
 
 but shall not be effectual if done to the prejudice of creditors. . Upon whom does it lie, to show it to have been done in prejudice of creditors? • Surely upon the creditors: or the words of the statute, “to take effect at thékleath of the testator,” can never be fulfilled in any case of mandinission; if it can only take effect.aftér the manumitted slaves have shown it had not been done in prejudice of creditors; or if, as a condition precedent to effective manumission, the slaves must carry executors, creditors and all interested in the real estate, into a court of ■equity, to prove the manumission not to have been made in prejudice of creditors.
 

 But the case before us is distinguishable from that in Harris and Gill in other particulars which make that case inapplicable. The first difference is, that the record shows in this case, there were no creditors of the testatrix, Frances Edelin, at the time the suit was brought in the circuit court. The only sum which could then be charged upon the estate was the right of retaining; which the executor liad, on account of his having overpaid beyond assets. He then is the oply creditor, by his own admission; and when he admitted the sufficiency of real estate, to pay [limself, there was an end of .all inquiry as to what was the value of the land. There was jnothiug due to any one else: consequently, no one could be prejudiced: and the words ir the statute, “ in prejudice of creditors,” cannot be construed to apply to any other than the testator’s creditors at-the time of his death, and 'such as might become so for funeral . charges; not to such a-s the executor might make his creditors,
 
 *481
 
 vii tute officii; and much less to defeat a manumission, in favour of an executor, because he- has carelessly, though bona fide, paid debts beyond assets.
 

 Upon the whole then, our opinions are: that, by the statute of Maryland, .1796 ; ch. 67, sec. 13; manumissions of slaves by will and testament, may be made to take effect at the" death of the testator: that the testator may devise or charge his real estate with the payment of debts, to make the manumission effective, and not in prejudice of creditors: that the right to freedom may be tried in a suit at law, against the executor, at the instance of the manumitted slaves; and that the executor may, in such suit, admit the existence of a sufficiency ofi real assets or real estate, to pay the debts of his testator: that a judgment at law in favour of slavesr manumitted by will, in a suit between them and an executor, upon his admission’of. a sufficiency of real estate' to pay creditors, may be set aside in equity, if such admission was made without foundation in fact, or in fraud or- mistake, upon, the creditors’ showing either, in a proceeding in equity to which the manumitted slaves, the executors, and all persons interested have been made parties — in which there may be a review of the entire administration of the estate, of the conduct of the executor, and that of creditors in regard to the estate, and in regard to the vigilance of the one in payiug, and of the others in pursuit of their debts.
 

 That the words in this will, “ and-after my debts and funeral charges are paid, I devise and bequeath as follows,”, amount to a charge upon the real estate, for the payment of debts.
 

 That when a testator manumits his slaves by will a.nd testament, and it clearly appears to have been his intention that the manumission shall take place at all-events; the manifest intention, without express words, to charge the real estate, will charge the real estate for the payment of debts; if there be not personal assets enough, without the manumitted slaves, to pay the debts of the testator.
 

 That in such a case, the creditors of the testator must look - to the real estate for the payment of debts which may remain unpaid after the personal assets, exclusive of the manumitted slaves, have been exhausted; and that they must pursue their
 
 *482
 
 claims in equity, or according to the statutes of Maryland, subjecting real estate to the payment of debts, to make their, debts out of the land.
 

 That when an executor permits manumitted slaves' to go at large and free, under a manumission to take effect at the death of the testator, he cannot recall such assent by his own act: nor can it be revoked under the order of an orphan’s court in Maryland, for the sale of all the personal estate of a testator; that court not having jurisdiction of the question of manumission.
 

 That in this case, it being admitted that the testatrix left real estate to an amount in value more than.sufficient to pay her debts, without the sale of the negroes emancipated by the will; the defendants in error are entitled to freedom.
 

 The judgment of the circuit court, is therefore affirmed:
 

 Thte cause came on to be heard on the transcript of the record, from the circuit court of the United States, for the District of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed with costs.