THE PRESIDENT, DIRECTORS, AND COMPANY OF THE BANK OF THE UNITED STATES, AND THE UNITED STATES, v. JAMES B. BEVERLY AND JANE HIS WIFE, WILLIAM RAMSAY AND ELIZABETH HIS WIFE, HAMILTON AND JAMES PETER, HEIRS OF DAVID PETER, DECEASED, AND GEORGE PETER, SURVIVING EXECUTOR OF DAVID PETER, DECEASED.

The case in 10 Peters, 562, reviewed and confirmed.

A fact tried and decided by a court of competent jurisdiction cannot be contested again between the same parties; and there is no difference in this respect between a verdict and judgment at common law and a decree of a court of equity.

But an answer in Chancery setting up, as a defence, the dismission of a former bill filed by the same complainants, is not sufficient unless the record be exhibited.

A disposition by a testator of his personal property to purposes other than the payment of his debts, with the assent of creditors, is in itself a charge on the real estate, subjecting it to the payment of the debts of the estate, although no such charge is created by the words of the will.

Lapse of time is no defence where there is an unexecuted trust to pay debts, which this court, in 1836, decided to be unpaid in point of fact.

THIS case grew out of that of Peter *v.* Beverly, which came before this court in 1836, on an appeal from the Circuit Court of the District of Columbia, in decreeing an injunction on the proceedings of the then complainants, to sell a part of the real estate of David Peter, deceased. A full report of that case will be found in 10 Peters, 532, *et seq.*, wherein all the facts and circumstances attending it are fully set forth in the opinion of the court, and do not require repetition now. The result of that opinion was a reversal of the decree below; a dissolution of the injunction; an order that the bill of the complainants be dismissed, and that the cause be remanded to the Circuit Court, with directions to carry the decree of this court into effect. This was done, and the decree consummated by a sale of the property in controversy, which consisted of those parts of the real estate of David Peter which he had by his will charged with the payment of his debts; but they being insufficient for the purpose, the present bill was filed in order to subject the residue of the estate, not so charged directly by the will, to the payment of the residue of the debts of the estate.

In March, 1836, the heirs or devisees of David Peter executed a deed to John Marbury, authorizing him to sell certain property, which he accordingly did; the amount of sales being $38,722 32 cents.

At a subsequent period of 1836, the Bank of the United States, in behalf of the said bank, and of the United States, and of such of the creditors of the estate of David Peter as should come into court and contribute to the expenses of the suit, filed a bill against George Peter, surviving executor, against the heirs or devisees of David Peter, and against John Marbury, trustee as aforesaid, stating that the personal estate of the said testator had been applied to the use and benefit of the heirs by the executors, in the fulfilment of the trust created by the will, and claiming that the real estate of the said testator, or the proceeds thereof, or as much as might be necessary, should be applied to pay whatever balance might remain due to the creditors, after selling and applying to that purpose the proceeds of the city lots and the land upon which Dulin lived. It prayed, also, an injunction against Marbury, and for other and general relief.

In April, 1836, the following agreement was made between the counsel of the respective parties, and filed in the cause.

### *Agreement of Counsel.*

It is agreed by the parties in this cause, by their counsel, that the Bank of the United States and George Peter, who claim to be creditors of the estate of the late David Peter, for a balance of debt which may remain to them after the application of the trust estate provided in the will of the late David Peter for the payment of his debts, shall, if such balance be established against the defendants, the heirs and devisees of David Peter, as to so much of David Peter's real estate as is conveyed to John Marbury, by deed filed as an exhibit with complainant's bill, look to the proceeds of sales of said real estate so conveyed to the said John Marbury, in lieu and stead of the said real estate itself.

It is further agreed, that as soon as the purchase-money of said real estate shall become payable and be collected by said John Marbury, he shall invest the same in his own name, as trustee, in Pennsylvania State stock, bearing interest at the rate of 5 per cent., first deducting therefrom the necessary expenses, taxes due on the said property, to the day of sale, and the commissioners provided for in the said deed; the whole of the proceeds of the said sales, after such deductions made, to be subject to the order and decree of this court in this cause for the disposal thereof, whether the said order or decree be for the payment of debts due from the said estate of David Peter to the Bank of the United States, or to George Peter, or other person, or from the said heirs and devisees, or either of them, to the said Bank of the United States, or George Peter, or either of them, on account of any portion of the personal estate of said David Peter, used or retained by them severally; provided, also, that it is the true intent and meaning of this agreement, that the part, portion, or interest of each of said heirs and devisees, should be responsible only for so much of the claims and debts of said heirs and devisees, to said Bank of the United States, or George Peter, as he or she shall be personally responsible for; and that no one shall be held or deemed responsible for any other than him or herself.

It is further agreed, that the Bank of the United States, or George Peter, or either of them, by themselves or their agent,

may stop or postpone the sale of any portion, or the whole, of the property advertised for the 15th inst., or any future attempted sale of property so conveyed to said John Marbury, if they, or either of them, should be dissatisfied with the prices bid, or offered, for said property, or any portion thereof; provided, however, that all the said property shall be sold during the present year, unless the said bank and George Peter consent to further delay.

It is further agreed, that the three story brick house and lots appurtenant in Washington City, set forth in said deed to John Marbury, as devised in trust for William H. Peter, shall be sold jointly by the said John Marbury and the said George Peter, sen., executor of David Peter, and upon the terms mentioned in the deed to said John Marbury; and that the proceeds of the sale of the said house and lots appurtenant, after deducting expenses and taxes, shall, when the same becomes due and is collected, be invested by the said John Marbury and George Peter, in their joint names as trustees, in five per cent. stock of the state of Pennsylvania, to abide the order of this court for the disposal of the same. The said John Marbury to charge no commission on the proceeds of said sale, if the court shall be of opinion that the said house and lots appurtenant be part of the real estate of David Peter; and the said George Peter to have no commission on the proceeds thereof, if the court be of opinion that the same is the property of the estate of William H. Peter, deceased.

It is understood and agreed, that nothing herein contained is to be taken to amount to an admission by the defendants, the said heirs and devisees, or either of them, that any debt is due from them, or either of them, to the said complainants or the said George Peter; or to prevent them, or either of them, from having the benefit of the statute of limitation, by plea or answer, or any other defence, legal or equitable, against the enforcement of the claims of the complainants, or George Peter, except that the said defendants, the said heirs and devisees, do hereby waive any exception to the jurisdiction of the court, as to the personal estate in this agreement mentioned.

> F. S. KEY, *for United States Bank.*
>
> . JAS. DUNLOP, *Solicitor and Trustee for Geo. Peter.*
>
> JOHN MARBURY, *Sol'r for heirs, and devisees, and himself.*
> *April 12th,* 1836.

Afterwards all the defendants answered. George Peter, the executor, claimed to be a creditor of the estate; Marbury admitted the execution of the deed to him and the sales under it; and the devisees, Beverly and others, pleaded the lapse of time and the statute of limitations as a full and complete bar against the claim of the complainants. They also denied all knowledge of an arrangement with the Bank of Columbia; required proof of it; denied the authority of the executors to cast any further burden upon the real estate, than such as would result from a deficiency in the personal estate; denied that the executors applied to the bank for indulgence; averred that the negligence of the executors alone prevented the recovery of the purchase-money of the farm from Magruder; averred that the children of David Peter were minors at the time of his death, and incapable of consenting to any arrangement whatever with the banks; that Beverly had no knowledge of, or interest in, the property until 1819, when his marriage took place; that they were never able to acquire any information, and never did, of the complicated affairs of the estate; praying that the decree of the court, dismissing a similar bill in 1827, may be as effectual as if formally pleaded; averring that any agreement with the banks could affect nothing more than the trust part of the real estate; they deny the authority of the court to decree a sale of property situated in Maryland; aver that the executors received large sums of money for which they have rendered no account; that no part of the personal estate came into the possession of Beverly since his marriage; that if any part of it came into the possession of his wife before her marriage, it was very inconsiderable indeed; and that the personal estate continued principally in the possession of George Peter, the executor, by whom it was used, wasted, and otherwise disposed of.

On motion of the complainants, by their solicitor, the Circuit Court ordered " That the decree of the Supreme Court, and the bill, answers, exhibits, depositions, and proofs in the case of Beverly *v.* Peter in the said record, and on file in the said cause, be read and made use of in the hearing of this cause."

In January, 1840, the papers in the cause, with the evidence already taken and on file, were referred to the auditor to state an account between the parties upon the principles of his former report, and in November, 1840, he reported as follows:

Bank of the United States *v.* Beverly et al.

## *Auditor's Report.*

The Bank of the United States and Peter,
·            *v.*
   The Estate of David Peter, deceased.
                   } In chancery.

The undersigned auditor of the Chancery Court for Washington county, District of Columbia, has had the papers filed in this cause under examination, and now submits the following report:

. That the claim of the Bank of the United States against the estate of David Peter, with interest to the 12th day of November, 1840, and costs, is $46,119 75; and that the claim of George Peter, per statement herewith, is $26,607 78. That the net proceeds of the sales of property sold by George Peter, as executor, is $17,513 66, to which may be added the estimated value of two thousand acres of land in Montgomery county, Maryland, called Dulin's, (which originally sold for a little upwards of $20,000,) $7500; of vacant lots in the city of Washington, $1500, and $2873 15 being the amount awarded to the proprietor of Dulin's farm by the Chesapeake and Ohio Canal Company, for damages done by running said canal through that farm, which sum has never been paid by the executor of David Peter. These several items, if the property brings this estimated value, will make the sum of $29,386 81 for trust estate.

That the sales made by John Marbury, under an agreement made by the parties to this cause, as per report of sales, amount to $41,731 86, but owing to the non-compliance with the terms of sale, of some of the purchasers, the corrected sales as specified in Mr. Marbury's account No. 2, the amount is reduced to $38,722 32; the whole amount of the payments received by Mr. Marbury up to the 20th April, 1838, is $21,711 16, from which deduct, for expenses, taxes, surveying, auctioneer's bills, and the trustee's commission $1,804 76, leaving in the hands of the trustee, $19,906 40, which amount, according to his report, has been vested in the stock of the state of Pennsylvania, bearing interest at 5 per cent. per annum. The corrected sales, as above, amount to $38,722 32, to which may be added as follows: Wm. Ramsay's purchase of lots, $2084, and Wm. Stewart's, $501, which still remain for the trustee to dispose of, and if they bring the same at which they were struck off at to Ramsay and Stewart, will make, when added to the $38,722 32, the

sum of $41,307 32 as gross sales; in addition to this sum, there remains twenty-four acres of land, near the city of Washington, bought at the sale by Mr. Upton, who never complied with the terms of sale, and never has paid for, which it is believed will sell for $1000; this will make the trustee's sales amount to $42,307 32, and taking the expenses, commissions, &c., as before mentioned, it will leave in the hands of the trustee the sum of $40,502 56.    That it thus appears, that the sales of George Peter, acting under the will of David Peter, amount, if the sales shall be equal to the estimate here given, will be $29,386 81, and those by Mr. Marbury, $40,502 56.    To these sums are to be added the amount of interest received on the notes given in payment, and the interest on the Pennsylvania stock.

The auditor has read and considered the pleas of limitation put forth by the answers of the heirs of David Peter, and by John Marbury, Esquire, as their solicitor in this cause, and is of opinion that it is not available, under the circumstance of this case, as it respects either of the creditors.

Submitted by                           JOSEPH FORREST, *Auditor.*
10*th November*, 1840.

In the audit of the 10th December, 1833, the executors are charged with the following, being for property sold in the city of Washington to sundry persons, viz.: Shaw and Elliot, lots $1000; J. Kuhn, $796 86, and Francis Dodge, $175, making in the whole $1971 86.    It is contended by George Peter, the surviving executor, that he never received this amount, or any part thereof, but that the same was received by the heirs; as Major Peter gave deeds to the purchasers, the auditor is of opinion, that it was rightfully charged in said audit. This amount the executor can bring into his settlement with the heirs, but not into a settlement with the creditors of the estate.

JOSEPH FORREST, *Auditor.*

10*th December*, 1840.

Whereupon the complainants, by their solicitor aforesaid, filed the following exceptions to the auditor's report:

*Complainants' Exceptions.*

Because the auditor has charged George Peter, surviving executor, with the purchase-money of the lots sold to Kuhn and

Birth, when it was proved, that the same was not received by him, but by James B. Beverly, or was applied by him to the payment of debts of the deceased, for which the executor is not credited.　　　　　　　　　　: F. S. KEY, *for complainant.*

Whereupon the said defendants, by their solicitor aforesaid, filed the following exceptions to the auditor's said report, to wit:

### *Defendants' Bill of Exceptions to Auditor's Report.*

Exceptions on the part of the heirs at law and devisees of David Peter, defendants in the above cause, to the report of Joseph Forrest, Esq., auditor, made in this cause, and filed the day of November, in the year 1840. The said defendants except to the said report,

1. Because the auditor has allowed a claim or debt of $46,119 25, in favour of the complainants, the Bank of the United States, against the estate of the said David Peter and the defendants, his heirs and devisees, without legal, competent, and proper evidence of the existence of such debt, or of any debt whatsoever, due from the said David Peter, in his lifetime, and with the payment of which these defendants ought to be charged in this suit.

2. Because, in stating the said pretended debt or account, between the complainants and the said defendants, the heirs and devisees of the said David Peter, the auditor has allowed compound interest, and thus, unjustly, illegally, and oppressively increased he said pretended debt.

3. Because, if any such debt was due from the said David Peter, in his lifetime, and at the time of his death, which happened in the year 1812, the recovery of the same against these defendants, as the heirs and devisees of the said David Peter, in consideration of any real estate descended from, or devised by the said David, to these defendants, was barred by lapse of time and the provisions of the act of limitations; and although these defendants, in their answer to the bill of complaint, and at the hearing before the auditor, insisted on the lapse of time and the provisions of the act of limitations, in bar of the said debt or demand of the complainants, the auditor rejected their said defence, and allowed the said debt or demand.

4. Because George Peter, the surviving executor of David Peter, and one of the defendants to the said bill of complaint,

having elected to come in and contribute, with the complainants, to the expenses of this suit, filed an account as a creditor of the estate of the said David Peter, amounting to the sum of $26,607 78, which said sum of $26,607 78, the auditor has allowed as a just and proper charge against the estate of the said David Peter, and for the payment of which, the real estate, devised by the said David to these defendants, ought to be sold. Whereas, these defendants say, that there is no evidence in the cause to prove the same, or any part thereof, to have existed as a debt against the said David Peter in his lifetime, or to authorize a decree for the sale of the real estate devised to these defendants, by the said David, for the payment of the same.

5. Because, each and every one of the items of charge contained in the account of the said George Peter, so allowed by the auditor, was of more than three years' standing before the filing of the said account, by the said George Peter, with the auditor, and before the filing of the bill of complaint in this cause by the Bank of the United States, against these defendants and the said George Peter, and was, at the time of the filing of the said bill of complaint, barred by lapse of time and the provisions of the act of limitations; and these defendants, at the hearing before the auditor, and before the making of his said report, as appears by the said report, insisted on the lapse of time, and the provisions of the act of limitations, as a bar to the claim of the said George Peter; notwithstanding which, the auditor allowed the same.

6. Because the report of the auditor and the account accompanying the same, are not in pursuance of the order of reference to the auditor, but relate to claims and accounts not embraced in such reference.

7. Because the said report, accounts and statements, accompanying the same, are unsupported by legal and competent evidence in the cause, and therefore ought to be set aside.

8. Because the sum allowed to George Peter, as surviving executor of David Peter, by the auditor, is for a general balance on the settlement of the executor's account, as is alleged, for that amount overpaid the proceeds of the estate which came to the hands of the executors, to be administered; and the defendants, as heirs and devisees of the real estate of the said David Peter,

are not chargeable by the executors, or the survivor of them, with the payment of such balance. .JOHN MARBURY,
*Solicitor for the heirs and devisees of David Peter.*

. On the 21st of January, 1841, the cause came on for hearing on the exceptions to the auditor's report, and the bill, answers and exhibits, depositions and proofs and general replication; when the court decreed that the exceptions to the auditor's report, made by complainants, be overruled, and the exceptions of defendants to the auditor's report be confirmed; and that the bill of the complainants be dismissed with costs.

From that decree the complainants appealed to this court.

*Jones* and *Sergeant,* for the appellants.

*Cox* and *Reverdy Johnson,* for the appellees.

The counsel for the appellants made the following points. That the court erred.

1. In overruling the exception of complainants.

2. In confirming the exceptions of defendants, the claims of the bank and of George Peter being sustained in the record by the proof as reported by the auditor.

3. In dismissing the bill—

Because: 1. The bill filed in 1827, and the proceedings thereon, were no bar to the relief now sought.

2. Lapse of time and the statute of limitations could not, under the circumstances of the case, operate as a bar. .

3. Under the arrangement made between the banks and the executors for the benefit of the heirs, and according to the provisions of the will, the personal estate might properly be applied to the maintenance of the heirs.

. 4. If so applied (as it was) the real estate was liable to the debts, whether specifically so directed by the will, or not.

5. On that part of the real estate specifically directed to be sold for the payment of the debts appearing to be insufficient, the rest of the real estate was liable; and it was not necessary, in such case, to wait till an actual sale ascertained the extent of the insufficiency.

. 6. All these grounds were maintained in the opinion of this court in the former case between these parties.

In that case the court determined that the real estate specifi-

cally directed to be sold to pay debts, was liable to be sold for that purpose.

This bill avers the insufficiency of that part of the real estate (it having been sold) to pay the debts; which is not denied in the answer. And the appellants contend that, under the will and by the laws of Maryland, the residue of the real estate is liable to the extent of the insufficiency.

*Jones* argued that the act of Maryland of 1785, gave to simple contract creditors the same remedy against heirs as specialty creditors. The heirs and devisees in this case consumed the personal fund, and the testator intended it should be s . He had, in effect, alienated his personal estate from the payment of his debts. Where the legatees have a lien, they must resort to it: 1 P. W. 679; 2 Powell on Devises, 654. The executor can come in as a creditor. 3 P. W. 398; 3 Gill and Johnson, 324; 6 Gill and Johnson, 4. The plea of limitations cannot avail, because the will creates a trust to pay debts which consists mainly in a charge upon the real estate. The form of making the trust is not material. If there is a charge upon the land and no trustee, the court will appoint one. 13 No. of Law Library, page 10.

*Coxe,* contra.

The proceeding is exclusively upon the statute of Maryland of 1785, and not upon that of George II., making real estate subject to execution. But the debt must be in existence at the death of the testator, and the executor's claim, here, has arisen since. See 1 Harris and Johnson, 469; 2 Bland's Chancery, 327. In 1 Harris and Gill, 504, the petition was dismissed because it did not aver a deficiency of personal assets. The Court of Appeals reversed this, but only upon the ground that the deficiency might have been proved. But here it is neither averred nor proved. See 1 Bland, 415; 2 Bland, 250, 472; 4 Gill and Johnson, 296. In 8 Poters, 144, the court consider this act of 1785 as an enlargement of chancery powers, and say that the real estate is to be sold only when there are no personal assets. This claim was not against the testator; he died in 1812, and the Bank of the United States was not chartered until 1816. If it be by assignment, none is shown. If a guardian to the infants had been appointed, he could not have touched the real estate. How, then, can the

executor involve it? Law Reporter of March, 1840, page 1. As to limitations: there is only a general replication filed, and no special matter set forth in avoidance of the plea. The argument on the other side cannot therefore come in. 6 Peters, 64, says, "where the statute is pleaded, replication or amended bill must set forth the facts to take it out of the statute." As to the effect of limitations, 1 Bland, 91, 470; 2 Bland, 366; 8 Peters, 528; 3 Cond. Ch. Rep. 155; 4 Harris and Gill, 126, 270; 2 Gill and Johns. 491. As to a trust reviving a debt barred by statute, 1 Russell and Mylne, 255, or 4 Cond. Ch. Rep. 413. The bill does not aver a trust; and if there be one, who is the trustee? If it is the executor, the bill ought to have been against him alone, 2 Johnson's Ch. Rep. 614, 623, and authorities there cited.

*R. Johnson,* same side, examined,

1. Whether the case as presented by the bill could be sustained, supposing the creditors to be the creditors of the testator at his death.

2. Whether they were in fact such creditors.

3. Whether the answer and proof did not meet the averments of the bill.

4. Whether the complainants could come upon the real estate either upon the ground of an assigned claim to the bank, or that the executor had overpaid.

1. The complainants can succeed only upon one of two grounds—upon the act of 1785, or that there was a general trust created. It is settled in Maryland, that under the act of 1785 there must be an averment and proof of a deficiency of personal assets. 1 Harris and Gill, 504. But here the bill says there was a large personal estate. As to a general trust—how can that be, when there is a particular part of the estate devised to pay debts, if necessary? Testator died in 1812, and bill filed in 1836; in the mean time the debt has accumulated, by interest, to $46,000; the executor is a creditor to $26,000, making $72,000. The trust property is estimated at $29,000; the personal estate, which the testator thought might be insufficient, all gone, and the general estate is to make up $43,000. The whole estate will not pay the debt.

2. They were not creditors of the original estate. The executor's account begins in 1813, after testator's death, and the

other creditors claim by assignment; but none is shown. See 7 Harris and Johns. 134; 4 Gill and Johns. 303; 6. Gill and Johns. 4.

3. Answers rely upon limitations and lapse of time. Morrison *v.* Bell, 1 Peters, decided that the court would not try to get out of the statute, and in Gray and others, 1 Harris and Gill, adopts the same principle. Can the creation of a trust upon a part of the estate prevent the statute from protecting the rest? Did not the testator intend that his debts should be soon paid, and the residue of his estate go to his children, free from debt? Between the *cestui que trust* and the trustee, the statute stops; but if other parties are brought in, it is different. If it is the law which makes this property responsible, then it is not the intention of the testator; and if so, there was no trust, and the statute must run. 2 Story's Equity, 735, note; 2 Sch. and Lef. 630.

4. The dismissal of a former bill is a bar to this. 2 Story's Equity, 740; Cooper's Pleading, 269—271; Mitford, 237.

*Sergeant,* in reply, for appellants.

The hardship of this case is not on the side of the defendants; it is one of obstinate ingenuity on their side. Debt has never been paid, and children have had the benefit of the personal estate. No mismanagement of the fund anywhere. The creditors are worse off than the family. The Bank of Columbia broke along ago; if it had exacted its debt immediately, it would have been called a Shylock. The respondents are residuary devisees; the testator first provides for his wife, and then for his debts, and the will is the law of the case. (Mr. S. here gave a history of the case). The bill does not profess to be under the act of 1785. There was a special agreement of counsel, in which the defendants waived any objection to the jurisdiction of the court, &c.: they cannot now deny that the debt was due by the testator. We were entitled to the real, in aid of the personal, in 1813, and are so still. A devise of a part of the land to pay debts does not exempt the rest. Whoever takes the land takes it as a trustee. Jones *v.* Scott, 1 Russell and Mylne, says, that the intention of a testator to make a trust, prevents the statute from running. See 2 Story's Equity, 737, 741. The question in the case is, whether the executor shall be ruined, and the legatees

get the land for nothing. The family all concurred in what was done : the heirs and devisees had as much right as we had to go into chancery and have the estate settled up. As to the former suit being a bar, the record does not show any thing but the answer, or whether it was dismissed " without prejudice."

Mr. Justice BALDWIN delivered the opinion of the court.

.A summary of the points decided, and principles settled in the former case between these parties, will save much time in the investigation of those which are involved in this.

After taking a condensed view of the will of David Peter, the court declare, that he had unquestionable right, so far as respected his children, to charge the payment of his debts upon any part of his estate he might think proper, and that none but a creditor could control his will in that respect; that he had constituted his widow the trustee of the proceeds of all his estate, for the maintenance and education of his children ; and invested her with unlimited discretion in this respect, so far as the proceeds of his estate would go. Whereby the surviving executor is not accountable for any thing so applied by her, even if she would be chargeable with a *devastavit*, and that the proceeds of all his estate being thus vested in the widow, would render it necessary, independent of any express direction in the will, that recourse be had to the real estate for the payment of the debts. 10 Peters; 562, 563. The court then decide, that the surviving executor had power to sell, and that it was impossible to draw any other conclusion, than that it was the intention of the testator that the sale should be so made. 10 Peters, 566. . On the inquiry whether there is any subsisting debt due from the estate of David Peter to the banks, the court say, there is no pretence that they have been paid in fact, and if not, the trust remains unexecuted, and the land still remains charged with it. If the executors have paid the banks, or the banks have accepted their notes in payment of the notes of the testator, the only effect is, that the executors became the creditors instead of the banks, and may resort to the trust fund to satisfy the debt. But the court also say, that under the circumstances of the case, there is no ground for considering the debt of the banks to be extinguished, and they then proceed to state the result of their consideration to be this.

That the will created a power coupled with an interest that survives; that the surviving executor is the person authorized to execute that power and fulfil that trust; that the debt due the banks has not been extinguished, or the estate in any way discharged from the payment. That the executors are not chargeable with negligence or such misapplication of the personal estate as to make them responsible for the payment of these debts; and that from the auditor's report on the accounts of the executors, exhibited to, and allowed by him, there has at all times been, and now is, a considerable balance in favour of the executors against the estate. The court, then, refer to the exceptions taken to the auditor's report, and declare them to have been properly overruled by the court below, and proceed to render their decree as before referred to. 10 Peters, 569, 570.

So far, then, as related to the construction of the will, the disposition of the personal property, the charge of existing debts on the real estate, the power of the executor, the existence of a trust, and their duty to execute it by a sale of the property charged by the will, the decision of the court has settled the rules and principles on which the present controversy must be determined if they are applicable; it was made on great consideration, founded on authority, and nothing which has been urged in the argument of this case has caused us to entertain the least doubt of its entire conformity to the well established law of equity. So far as the evidence and facts of that case were considered and adjudicated, the decree of this court is final and conclusive; the parties and the subjects of controversy between them were the same as are now before us; negligence and misapplication of assets were charged on the executors, the existence of debts to them or the banks was denied by the then complainants, and now defendants, and both facts adjudged and decided adversely to them; and the auditor's report was confirmed, whereby every fact it contained became established and binding on the parties in any future controversy, as to any matter thus adjudicated.

In Hopkins v. Lee, this court state the settled law of all courts to be, that, as a general rule, a fact which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties, in the sa..e or any other court. Hence a verdict and judgment of a court of record, or a

decree in chancery, although not binding on strangers, puts an end to all further controversy concerning the points thus decided between the parties to such suit. In this, there is, and ought to be, no difference between a verdict and judgment in a court of common law and a decree of a court of equity. They both stand on the same footing. 6 Wheat. 113, 114; S. P. 1 Wheat. 355; 12 Peters, 492. Whatever, therefore, our opinion might now be as to the facts adjudicated in the former case, the judicial power is incompetent to revise the evidence on which the decree was rendered, on any ground now set up in the answer of the defendants, or apparent on the present record, and they must be taken to be beyond all controvery in this or any future case between the parties. Before proceeding to consider the questions appropriate to this cause, a reference to the case of Fenwick v. Chapman, 9 Peters, 466, will be useful, in order to ascertain what principles were there laid down and are applicable to the present controversy. Adopting the general rule that the personal estate of a testator shall in all cases be primarily applied to the discharge of his personal debts or general legacies, unless he by express words or manifest intention exempt it, the court thus qualify the rule; where the testator's intention clearly appears that a legacy shall be paid at all events, the real estate is made liable on a deficiency of personal assets. So where without any assistance from the will, the nature of the thing to be done may clearly show the intention to charge the real estate with a debt; as, where the thing to be done cannot be partially performed by the executor, without defeating the instruction which directs it, and the thing itself. On this principle the court holds, that the manumission of slaves pursuant to the directions of a will under the law of Maryland (which is the law of the eastern part of this district) operates as a specific legacy to the slaves, and to charge the real estate with the payment of the debts of the testator, even though he may have, at the time of his death, no other personal property than slaves. 9 Peters, 471, 473. That the creditor may be carried into a court of equity, or voluntarily resort to it to obtain his debt, either from the lands or the personalty, when the testator leaves it doubtful from what fund his debts are to be paid; that lands devised for the payment of debts, or which have become chargeable by implication, constitute

a fund for the payment of debts, and an ample and plain remedy is admitted to exist in the law of Maryland, so to apply them.

"The will is the executor's law, and he is no more than the testator's representative in all things lawful in the will. A special legacy of all the personal property is a law to him;" if there is an insufficiency of "personal assets to pay debts, it is the executor's duty to file a bill against the creditors and all interested in the estate;" "praying that the lands may be made liable to the payment of debts, that equity may be done to all concerned, according to the law of equity." 9 Peters, 474, 475. When he is charged with the sale of the testator's lands for the payment of debts, it is his duty to execute the whole of the testator's will, and in such a case the creditors have as good a right to look to the land through him for the payment of their debts, as they have to look to the goods and chattels through him, 9 Peters, 477; and they must pursue their claims in equity, or according to the statutes of Maryland subjecting real estate to the payment of debts, to make their debts out of the land. 9 Peters, 481, 482. These statutes are the 4 Geo. 2, adopted in Maryland, and the act of 1785, c. 72, sect. 5, which is recited in the Bank of the United States *v.* Ritchie, 8 Peters, 143, and which this court there declare has been construed in that state to be an enlargement of jurisdiction, and that decrees for selling the lands of minors and lunatics, in the cases prescribed by it, have been treated by the Court of Appeals, as the exercise of other equity powers. That these opinions of this court are in accordance as well with the statutes of Maryland, and the established rules of equity in cases of this description, we have no doubt; nor of their application to the present. It must therefore be taken to be a settled point, that a disposition by a testator of his personal property to purposes other than the payment of his debts, with the assent of creditors, is in itself a charge on the real estate, subjecting it to the payment of the debts of the estate, though no such charge is created by the words of the will. A trust is thereby raised which devolves on the executor, who may execute it by his own authority, or be compelled to do it by a bill filed by the creditors, either under the statute of 1785, or in virtue of the powers of a court of equity in relation to the execution of trusts, as the case may be; in this case there was such a trust fastened on the pro-

perty in controversy by implication of law, and the presumed intention of the testator, which can be enforced by these complainants, unless some valid objection has been made out by the respondents.

It has been contended that the frame of the bill is too defective to justify any action upon it, for the want of necessary averments, but when we take it in connection with the former cause to which it refers, the agreement of the parties on file, and the answer of the defendants, we think that a satisfactory answer is at hand. The object of the bill is clearly stated, such averments are set forth as on its face shows some equity which requires an answer; informal as they may be, they would stand the test of a demurrer, especially with the aid of the agreement, by which it appears that the defendants fully understood the nature of the plaintiff's case, the object sought, and the evidence on which they would rely. The answer is full to every matter of fact or law which could be averred in the best drawn bill; there has been no allegation of surprise, or any want of notice of the grounds on which the plaintiff rested his case, and the parties went to the hearing on the bill as it stood, fully prepared to contest their respective claims, as they had done in the first case, of which this was well known to be the consequence. Under such circumstances the objection is entitled to no favour, and is not sustainable as an obstacle to our action upon the merits of the cause.

The answer sets up the dismission of a bill filed by the complainants in 1827, against the defendants, for the same relief as is prayed for in the present bill, as a bar thereto; but no record of such case is set out or exhibited, so that, however true the answer may be in fact, it cannot avail in law. In this respect it is not responsive to the bill; it sets up distinct affirmative matter of defence and bar, which the defendants must prove, or it can have no effect for either purpose.

The statute of limitations, and the loss of time from the death of David Peter to the filing of the bill, are also plead and relied on as a bar, but we think that neither can apply to this case, which is an unexecuted trust for the payment of debts adjudged by this court in 1836, to be unpaid in point of fact, and then existing in favour of the banks and executor, and the present bill was filed soon after the decision was made. The confirmation of the au-

ditor's report, made in that case, is conclusive to show the amount of such debts at that time; so is his report in this case as to their present amount:. we cannot look through these reports for the evidence on which they were made; they have passed to judgment, and have the sanctity of records.

The remaining objections to the relief prayed for by the bill, which are founded on the principles of the law or the rules of equity, are covered by the former decisions of this court; those which arise from the evidence in the cause as to matters of fact material to our decision, are no longer open to controversy, and we are clearly of opinion that the complainants have made out their case in point of law and fact.

The decree of the Circuit Court must consequently be reversed. The cause is remanded with directions to make a decree in conformity with this opinion, by ordering a sale of the property in controversy, and consistently with the agreement of the parties filed of record, and the rules of equity as to the time of disposing of the several parts thereof, specifically devised by the will of David Peter. It is also directed, that the Circuit Court decree on the report of an auditor, or. as they may think proper, to what part or items of the account of George Peter, a preference ought to be given in payment over the other creditors of the estate of the testator, and make a final order thereon according to law and equity.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to proceed therein according to the opinion of this court, and in conformity to the principles of law and justice.