JOHN W. KILLEN and MARY EVELYN KILLEN,

*vs.*

WILLIAM B. PURDY and FRANCIS A. PURDY.

*Kent, Nov. 3, 1915.*

Where the cancellation of written instruments conveying land or containing agreements is sought in equity on the ground that such instruments were procured by fraud, the proof of the charges of fraud must be clear and unequivocal.

In a suit to cancel a conveyance of realty, evidence *held* insufficient to show clearly and convincingly that complainants' signatures to the instrument were procured by fraud.

Where complainants, owning mill property of which the dam had been swept away, contracted with defendants freely and without fraud, misrepresentation, deceit, undue influence, or coercion that defendants should build a new dam, taking a conveyance of complainants' land as security

for reimbursement, which contract set no limitation on the amount defendants could expend on the dam, the mere fact that after the new dam was under construction it was again swept away did not excuse complainants from performance of their contract on the ground that its performance, by defendants continuing the work, charging complainants again with the cost, would be unconscionable.

Where defendants, leasing a mill pond and other property, made complainant lessors promises respecting the uses to be made thereof, and respecting the wealth of persons associated with defendants who were likely to be users of the property, such promises, which were broken, were no ground for relief in equity to complainants seeking cancellation of a subsequent deed to defendants of the property, since a promise to do something in the future is not fraud based on false representations, and the remedy for the breach is solely by action at law.

In a suit to cancel a deed, complainants' motion for the submission to a jury of the questions of fact whether complainants executed the agreement in evidence in the cause, and whether they did not execute it believing it to be a duplicate of a previous agreement, will be denied, since the jurisdiction of equity to grant the relief prayed for is exclusive, ancient, and definitely settled, and, having sought the court, the complainants must continue therein in the discretion of the Chancellor

BILL TO SET ASIDE A CONVEYANCE. The complainants, John W. Killen and his wife, by the bill allege that Mr. Killen, owning a farm of about three hundred acres with a mill and mill pond thereon, on March 1, 1913, leased in writing to one of the defendants, William B. Purdy, and others, for ninety-nine years, all the water rights and the exclusive right to fish in the pond, the annual rent being one dollar. At the same time by another written agreement, the lessees leased to Mr. Killen for ninety-nine years all the water required to run the mill, the annual rent being one dollar. On March 8, 1913, by another writing, Killen agreed to sell, and Purdy to buy, about forty acres of land along the edge of the pond, the price being $1,400.-00, of which $25.00 was payable on signing the agreement and the balance within sixty days, the initial deposit to be forfeited for default in so paying. The mill dam was swept away on May 18, 1913, and the pond was nearly emptied of water.

It was further alleged that afterwards Purdy agreed to rebuild the dam of concrete if Killen would pay a portion of

the cost, not exceeding $1,200.00 out of the purchase money, $1,400.00, to be paid by Purdy to Killen for the forty acres above mentioned; that about July 12, 1913, Purdy produced such an agreement and it was signed by Killen and his wife, but that the complainant had no copy thereof; that several days afterward one James E. Melvin, a notary public, produced to the complainants a folded paper disclosing to them only their signatures to some instrument; and that they thereupon acknowledged the signatures to be their own, without looking at the rest of the paper. About October 28, 1913, the complainants learned that a deed dated August 12, 1913, and purporting to have been acknowledged by them, was on record whereby a tract of land containing twenty acres, with the mill, mill dam and other property had been conveyed to William B. Purdy and Francis A. Purdy for one dollar. The complainants denied that it was their deed, and that they had ever made one to the defendants, and that the deed was a scheme to deceive and defraud them and a cloud on their title. The bill prayed that the deed be canceled and the defendants enjoined from disposing of the property.

In their answer, the defendants set up a deed dated July 12, 1913, between the complainants and defendants, whereby the twenty acres and the mill, etc., were conveyed to the defendants subject to two mortgages of two thousand dollars each, and purports to have been duly executed, acknowledged and recorded. There was also shown an agreement in writing dated July 12, 1913, signed by the complainants and defendants, whereby after reciting a conveyance by the complainants to the defendants on the same day of the twenty acres of land, etc., and reciting that the defendants had agreed to repair the mill dam within six months, and in default thereof to reconvey the premises to the complainants, the complainants agreeing to pay the taxes, interest on the mortgages and all the cost of the repairs to the dam, etc., within a certain period and in certain installments. It was also agreed that if the defendants should expend fifteen hundred dollars on the dam, they would pay two hundred dollars on account thereof, and in any event would pay five hundred dollars if the amount expended exceeded

seventeen hundred dollars. It was further alleged that after the defendants had expended upwards of three thousand dollars on the dam it broke, and was washed out, and the complainants contributed to the disaster by knowingly permitting too large a head of water to accumulate. The defendants declared a readiness to carry out the agreements, including a reconveyance on compliance therewith, and denied fraud or undue advantage.

By amendments to the bill the complainants deny making the agreement contained in the written papers produced by the defendants, and say that if their genuine signatures appeared to such an agreement as that so produced, that sheets of paper had been fraudently inserted in the agreement with different provisions, and when they signed the papers laid before them they thought they were signing papers containing other provisions not in them. They also denied signing the deed, and say that if their genuine signature appear thereto they thought they were signing not a deed, but a duplicate copy of an agreement. A further prayer is added for a delivery up of the agreement for cancellation.

By answer to the amendment to the bill, the defendants reaffirm the allegations of their original answer, and deny the substitution of any new sheets of paper in the contract, and that both of the contracts produced by the defendants are in exactly the same condition as when signed and delivered to the defendants.

Testimony was taken before an examiner by depositions, and the case was heard on bill, as amended, and the answers and the testimony and exhibits produced.

*John R. Nicholson* and *Alexander M. Daly*, for the complainants.

*Robert H. Richards* and *W. Watson Harrington*, for the defendants.

THE CHANCELLOR. A large volume of testimony was produced on both sides of this cause; and it is contradictory and conflicting. The objects of the bill are to have cancelled and

annulled a deed, which on its face was duly executed and
acknowledged by the grantors and subsequently recorded, and
also a written agreement between the parties also purporting
to be duly signed by all parties thereto, and the further prayer
is for a perpetual injunction to prevent the defendants from
acting upon, or enforcing, the contract. The objection to the
deed is in effect, that it is a forgery, and to the contract, that
after signature pages were substituted containing matters of a
character different from that actually agreed on. Both of these
charges are most serious, and must be "clearly and unequi-
vocally proved." Frequently the courts in this State have so
stated the law as to charges of fraud. When the cancellation
of written instruments containing conveyances of land, or
agreements, is sought, the requirements as to proof are most
strict. To order a deed cancelled is to exercise what is regarded
as the most extraordinary exercise of power, and it is not to be
done unless the testimony be clear, unequivocal and convincing,
and cannot be done upon a bare preponderance of evidence,
which leaves the issue in doubt. As was said in *Pomeroy on
Equity Jurisprudence, vol.* 2, § 859:

"The authorities all require that the parol evidence of the mistake
and of the alleged modification must be most clear and convincing,—in the
language of some judges, 'the strongest possible,'—or else the mistake
must be admitted by the opposite party; the resulting proof must be estab-
lished beyond a reasonable doubt. Courts of equity do not grant the
high remedy of reformation upon a probability, nor even upon a mere
preponderance of evidence, but only upon a certainty of the error."

Chancellor Bates expressed the same general thought in
*Jamison v. Craven,* 4 *Del. Ch.* 311, 336:

"Now it must be a sound principle that a *prima facie* title to real
estate shall not be set aside upon mere suspicion, but upon proof only;—
and the proof must be sufficiently definite as to the ground of the defect
to enable the Court to know what it is doing;   *   *   *"

The deed and agreement purport to have been made on
the same day. The making of a contract is not denied. It
was not distinctly denied by the complainants in pleading or

testimony, that their signatures to both papers were genuine and they were in fact proved to be genuine. By the testimony it is clear that at least two papers were signed at the same interview which took place at the home of the complainants in the presence of several persons, and after a full discussion of the subject matter of the proposed arrangement whereby the Purdys were to rebuild the dam, advance the cost thereof, be repaid therefor by the Killens, and have the mill, mill-dam and certain land as security for such advances. If made at all the deed and contract were executed on the day they bear date, except as to the acknowledgment of the deed before a notary public. But the acknowledgment was chiefly important to permit the deed to be recorded.

In substance, the complainants say, not that the deed and contract were obtained as the result of false and deceiving representations of the defendants, but that they never knowingly signed the deed, and considered that they were signing a duplicate copy of the contract, and that after they had signed a paper which contained the real contract the defendants by some trick had changed the contract by inserting pages containing other and different matters, as to which they had not agreed, and omitted a matter which had been agreed upon. They, therefore, claim that they did not knowingly sign either the deed, or the contract, set up by the defendants. The real issues of fact are, therefore, narrow.

It was clearly shown that an agreement was prepared on the evening of July 12, 1913, and read over, and read aloud, before and after changes had been made in it, and there was a consensus of minds. The chief and only important difference in the contract which the complainants thought they had signed and the one produced by the defendants is the omission of a provision limiting the liability of Mr. Killen for the cost of rebuilding the dam to twelve hundred dollars; and to prove this say it was their intention to pay their maximum share of the cost of the dam from the purchase price of the forty acres of land which Mr. Purdy had agreed to buy for fourteen hundred dollars from Mr. Killen. But this is inconclusive, and the testimony of the complainants is unsatisfactory

and lacking in frankness. Proof of the trickery of substitution of pages in the contract is almost entirely dependent on their testimony. On the other hand, in addition to the denials by the defendants of the trickery, there is the direct and convincing testimony of Montgomery, which shows affirmatively that there was no such trickery. Stating it most favorable to the complainants, it was not clearly and convincingly shown that the contract produced was not the one made by the parties to it. .

The agreement as stated by the complainants is manifestly inconsistent with itself. If their maximum liability for the cost of the new dam was fixed at twelve hundred dollars, and they expected to pay that liability out of the fourteen hundred dollars, the purchase price of the forty acres which Purdy had agreed to buy from them, why was there in the contract a provision allowing time of payment by the complainants of their share of the cost of the dam? Recognizing this difficulty, Mr. Killen makes a lame explanation when recalled to testify in rebuttal. The contract produced by the defendants is more consistent in its contents. The complainants and defendants might very well have thought, on July 12, 1913, when they made a contract, that the maximum liability of Mr. Killen would be only twelve hundred dollars, for the cost of the new dam was discussed and it was generally considered by those present that it would be about seventeen hundred dollars, of which the defendants must pay five hundred dollars, so that Mr. Killen's share would be twelve hundred dollars. But this was only an estimate made by all the parties of the cost, and not a representation of Purdy alone, or even a promise by him to limit the cost to about seventeen hundred dollars. The making of this estimate may be the source of the error on the part of the complainants, and it is fair to give them the benefit of the doubt on this point. It was argued that the physical appearance of the contract showed a substitution of pages, but it did not appear so to me. If the contract produced and actually signed by the complainants was the one really made, then the deed also was genuine and was executed on July 12, 1913. It was recited

in the agreement that one had been made, Mr. Killen expected to make one, and it was shown by satisfactory evidence corroborating the defendants that the complainants did sign the deed on July 12, 1913, and subsequently acknowledged it as such, and did so knowingly and in execution of their agreement.

There is no sound reason, therefore, why the deed or agreement should be cancelled, or annulled.

It was urged that the complainants made an unconscionable bargain, and for that reason the further assertion of rights under the contract should be enjoined. The chief element in this contention was the absence of any limitation on the amount which the defendants could expend on the dam and the large expenditure which they had already made before the bill was filed without having yet completed the work, all of which, except a small proportion, was payable by the complainants, and for the payment of which the defendants held land of the complainants as security. When made it was not unconscionable and was made freely by persons competent to act and judge respecting their own interests, and without fraud, misrepresentation, deceit, undue influence, or coercion. It was, when made, a fair bargain, mutually advantageous. One party owned a mill property, useless because the water supply for power was destroyed when the dam burst, and the other wanted the dam rebuilt in order to have the mill pond for fishing. The defendants undertook to advance the money for the purpose, taking the mill property as security for a repayment and giving the complainants time within which to repay the advances and regain their property so pledged. This was manifestly more advantageous to the complainants than the defendants in its inception. The trouble came when the dam broke a second time with the work of rebuilding it incomplete. It was not established, even if it be material, that this second calamity was entirely chargeable to the defendants. This misfortune must be borne by both sides. If as a result the defendants must expend a sum of money much larger than any one expected, the contract has not become, for that reason, unconscionable, or unenforceable by the defendants. To do so would charge the whole of the misfortune to them, for which there is no fair or just reason.

Inasmuch as it is admitted by all parties that the instrument, though in form a deed, is in substance and effect a mortgage, and the complainants have at any time a right to enforce a reconveyance on showing performance of their written contract made in connection with the deed, there is no harm done to them based on the fact that the deed is a simple deed and contains no defeasance clause. No decree of this Court made at this time could do more than declare those rights, but this, if prayed for, would only be a declaration of what is a matter of record in the cause, and the court would have no power or right to grant now any relief based on such a declaration.

No relief is due the complainants, based on any promises or declarations by the defendants respecting the uses to be made of the mill pond and other property leased from the complainants, or respecting the wealth of the persons associated with the defendants as likely to be users of the property. If any promises as to improvements and the like were made, and have not been performed within the agreed, or a reasonable time, and there is a ground of action on the broken promises, it is at law, and such a cause of action does not entitle the complainants to any of the relief sought here. Proof of promises to do something in the future do not in general constitute proof of fraud based on false representations. 2 *Pomeroy on Equity Jurisprudence* (3d Ed.) § 876 *et. seq.; Maclary v. Reznor*, 3 *Del. Ch.* 445, 464; *s. c.* 4 *Houst.* 241.

After a great volume of testimony had been taken, and at the argument, the solicitors for the complainants urged and moved for the submission to a jury of two questions of fact, viz:

"First: That the complainants, John W. Killen and Mary Evelyn Killen, did not execute the agreement put in evidence in this cause, but that they executed an agreement which limited the sum which they agreed to pay towards the cost of repairing, altering and improving the mill and the dam described in the pleadings, to the sum of $1,200.

"Second: That the said John W. Killen and Mary Evelyn Killen did not execute and acknowledge the said deed knowingly, but believing it to be a duplicate or triplicate of the said agreement in which they had agreed

Opinion.

to pay a sum not exceeding $1,200 to the said Purdy as their.proportion of the cost of repairing, altering and improving the said mill and dam."

This motion, while it serves to show the narrowness of the real contentions of the complainants, must be denied. The jurisdiction of a court of equity to grant the relief prayed for is exclusive, ancient and definitely settled, otherwise the complainants would be remediless for any grievance they have asserted. Having come to this court, the complainants must continue therein. If there was any real doubt on the subject I might, when so moved at the proper time, have ordered an issue. But having none now, it would be shirking of duty to grant the motion and not decide the cause and all the issues of fact that arise in it. If the motion is based on the statute, and is made a matter of right, it must for that reason be denied. Such an interpretation of the statute would declare a limitation of the inherent power of the Court of Chancery, if as a result thereof the Chancellor would have no discretion whether to send all issues of fact to a jury. It is not a matter of right that every motion for an issue, whenever made, must be granted, and if, as in this case, discretion to refuse it is in the Chancellor, that right is exercised against it.

There being, then, no ground shown for obtaining any of the relief sought, or any unsought relief, the bill must be dismissed, and all the costs of the cause paid by the complainants.

NOTE. On appeal the decree in this case was affirmed. See *post p.* 396.