FRANK P. O'DONNELL and DANIEL I. O'DONNELL, Executors of the Last Will and Testament of John P. O'Donnell, deceased,

*vs.*

MARY A. O'DONNELL GALLAGHER, WILMINGTON TRUST COMPANY, Guardian of John D. O'Donnell, FRANK P. O'DONNELL and DANIEL I. O'DONNELL.

*New Castle, July* 9, 1920.

Where there is a general bequest of all testator's personal estate, and, as well known to him at the time of making the will, his personal estate was then, and also at the time of his death, largely inadequate to pay his debts, the personal estate is not on that account exonerated from the payment of his debts.

A provision in a will that the persons named as personal representatives of deceased should be administrators of his property, real and personal, *held* not to indicate an intention on the part of testator to exonerate his personal estate from the payment of his debts, so as to allow devisees to share therein.

BILL FOR CONSTRUCTION OF WILL. The bill is for the construction of the will of John P. O'Donnell, late of Wilmington, which is as follows:

"Dispensary of the Hospital of the University of Pennsylvania,
   "Thirty-Fourth and Spruce Streets.

. "30th August, 1918.

"John P. O'Donnell manifested his will, that all his personal property should be given to his brothers and sisters. The house 304 S. Jackson is to be given to his son John D. O'Donnell, when same reaches the age of 21 (twenty one) years. Furthermore that Frank P. O'Donnell is appointed administrator of John D. O'Donnell's property, until John D. O'Donnell reaches the age of 30 (thirty) years; i. e. that Frank P. O'Donnell should assume tutorship until he reaches the said age. Furthermore that Daniel I. O'Donnell and Frank P. O'Donnell should be administrators of his property, real & personal. Furthermore that Daniel I. O'Donnell should be manager of the personal business of John P. O'Donnell located at 510 Market Str. It is John P. O'Donnell's desire that no bond or security should be required of the administrators.

"John P. O'Donnell."

On September 3, 1918, four days after making the will, the testator died, and his will was duly probated and letters testamentary thereon were granted to Frank P. O'Donnell and Daniel

O'Donnell, et al., vs. Gallagher, et al.          223

Statement of the Case.

I. O'Donnell. The testator, a widower, left to survive him one child, John D. O'Donnell, a minor, and also one sister, Mary A. O'Donnell Gallagher, and two brothers, Frank P. O'Donnell and Daniel I .O'Donnell, the two brothers being the executors. Wilmington Trust Company is the guardian of the minor.

The value of the personal estate of the decedent was $9,389.53, and his debts, exclusive of the expenses of administering his estate exceeded $30,000. A portion of his real estate was sold by order of the Orphans' Court for the payment of his debts, and after paying his debts and administration expenses the executors have in hand, according to the first and final account, $28,898.15, the personal estate and proceeds of the sale of the real estate being treated as a common fund.

It was shown by testimony that there was no change in the quantity or condition of his estate between the date of the will and his death. Also that he was not the owner of 304 South Jackson street, mentioned in the will, but was a tenant thereof for life by the curtesy.

There being a question as to the testamentary intention respecting the gift of the personal estate, the executors asked instructions whether the whole balance should be paid to the guardian, or an amount equal to the value of the personal estate should be paid to the sister and brothers of the deceased. The guardian of the minor and the sister and brothers were made parties defendant, and have answered the bill. For the minor child it was claimed that the personalty was under the law applicable first to the payment of debts and as the debts exceeded the personalty nothing passed to the brothers and sister; while on the other hand the brothers and sister claim that the personal estate was exonerated from payment of debts of the decedent, who well knew the character and amount of his assets and liabilities and the disparity between his debts and his personal estate; and that the value of the personal estate is payable to them under the legacy thereof to them.

The cause was heard on bill, answer and oral testimony of witnesses.

*James I. Boyce*, for brothers and sister.

*Aaron Finger*, for minor child.

THE CHANCELLOR. The main question in the case is whether the testator by a gift of all of his personal property to his brothers and sister exonerates such property as an asset for the payment of his debts, it being shown by evidence that at the time of making his will his personal estate was to a large degree insufficient to pay his debts and his real estate ample for the purpose, and no change in this condition of his estate had occurred at his death four days after making his will.

There is in the will no evidence of testamentary intention to alter the established rule which makes the personalty the primary fund for the payment of debts of the decedent, or to exonerate the personalty, or charge the realty. It was not so expressly provided there. Indeed, there is no mention of debts in the will. The only evidence of intention to exonerate the personalty must be found, if there be such intention, as an inference from facts extrinsic the instrument. It was not claimed that the gift of all of his personal property was a specific legacy, and entitled to be exonerated as specific legacies are. The gift of "all of his [my] personal property," where there are in the will no expressions that require a different construction, mean simply the balance of the personal estate that should be left after the payment of the debts of the testator and other legal charges such as those of burial and of administration. *Miller v. Cooch*, 5 *Houst.* 540, 1 *Am. St. Rep.* 161, in the Court of Errors and Appeals. The specific question is this: Does the clear insufficiency of his personal property presumably well known to the testator show of itself an intention either to exonerate the personalty from the payment of his debts, or charge payment thereof entirely on his real estate?

It has been held in some states of this country that where there is a paucity of personalty to pay pecuniary legacies this may be considered as evidence of an intention to impose payment thereof on real estate of the decedent. Among others are these: *McCorn v. McCorn*, 100 *N. Y.* 511, 3 *N. E.* 480; *Ely v. Megie*, 219 *N. Y.* 112, 113 *N. E.* 800; *Price v. Price*, 52 *N. J. Eq.* 326, 29 *Atl.* 679; *Bragaw v. Bolles*, 51 *N. J. Eq.* 84, 25 *Atl.* 947; *Estate of Marie P. Lutz*, 157 *Mo.* 439, 57 *S. W.* 1018, 50 *L. R. A.* 847; *Davidson v. Coon*, 125 *Ind.* 497, 25 *N. E.* 601, 9 *L. R. A.* 584;

*Smith v. Cairns*, 92 *Tex*. 667, 51 *S. W*. 498, reversing *Cairns v. Smith*, (*Tex. Civ. App.*) 49 *S. W*. 728.

But even in New Jersey insufficiency of the personal estate to pay legacies is not of itself sufficient to charge the payment of legacies on real estate. *Johnson v. Poulson*, 32 *N. J. Eq*. 390, 395; and *Turner v. Gibb*, 48 *N. J. Eq*. 526, 530, 22 *Atl*. 580.

Almost all of the English cases and some American cases oppose the use of extrinsic evidence in such cases. In *Stephenson v. Heathcote*, 1 *Eden*, 37, 28 *English Reprint*, 598, the Court said:

"The ruling principle in the construction of wills is, that the court is bound to find out the intention of the testator, if it be possible so to do, however inartificially the will may be expressed. But this intention must be discovered from the words of the will itself, and not from extrinsic circumstances; and the court must proceed upon known principles and established rules, not on loose conjectural interpretations, or by considering what a man may be imagined to do in the testator's circumstances.

"We are not to inquire into the amount of the personal estate to know whether it be or be not sufficient to pay the testator's debts, because that would be to establish a general rule, that in every case where the personal estate is insufficient, it must be presumed to be the testator's intention to charge his real estate with the payment of all his debts."

In the case of *Ferris v. Ferris*, 11 *Del. Ch*. 71, 198 *Atl*. 215, there were in the will other indications of intention to make the pecuniary legacies payable from real estate than the insufficiency of the personal estate for that purpose. Indeed, in that case such insufficiency of the personalty was not the main, but a superadded reason for applying the proceeds of realty to the payment of pecuniary legacies.

In the case of *Sussex Trust Co. v. Polite, ante p*. 64, 106 *Atl*. 54, evidence extrinsic the will was admitted to identify the property devised, or rather to ascertain what was included in the description which the testator gave of the property devised. The devise was the tract of land "where I now reside," and evidence was admitted to show the testator after making his will had sold part of the tract and bought other adjoining land, and also his declarations as to his reasons for making the changes, taken together with evidence of the actual annexation of the after-acquired land to and its use as a part of the tract on which he resided at the date

of the will. There are no other cases in the courts of Delaware which throw light on the present problem.

The question here is different from those raised in the cases cited above. Here the effect of the insufficiency of the personalty to pay debts—not pecuniary legacies—of the decedent, there being a gift of all of the testator's personalty, is under consideration. None of the cases cited hold that such insufficiency of itself exonerates the personalty from the payment of debts of the decedent, and no such authority has been found. In *Quinby v. Frost*, 61 *Me.* 77, where the personal estate was insufficient to pay the debts of the decedent, the Court found in the will, taken in connection with this fact, an intention that the debts be paid from the proceeds of the sale of real estate, though a sale for such purpose was not expressly directed by the will. As appears in the opinion, the chief factors in this conclusion were the direction to pay debts "out of my estate," and an express trust of his real and personal estate by the wording of which the Court concluded an intention to place the whole of his personal property as a fund for the support of certain persons. In *Fenwick v. Chapman*, 9 *Pet.* 461, the testator manumitted certain slaves, and this was considered evidence of intention to exonerate them as an asset for the payment of debts of the decedent. This would seem to be, if not a specific legacy, one in the nature thereof.

Each of the last cited cases have peculiar features not found in the will of John P. O'Donnell, and they do not support the claim of the brothers and sister to the personalty, and in neither of them is it said that the deficiency of personalty to pay debts is of itself sufficient to exonerate the personalty as the primary fund for payment of debts where there is a general gift of all of the testator's personalty. It may not clearly appear why a different rule should prevail respecting debts and pecuniary legacies under such circumstances, but as no other court has applied to debts the rule adopted by some courts as to legacies, it is not right to do so in this case.

Where there is a general bequest of all of the testator's personal estate, and as was well known to the testator at the time of the making of the will, his personal estate was then and also at his death four days later largely inadequate to pay his debts, the

personal estate was not on that account exonerated from payment of his debts.

Some parts of the will were pointed out as showing intention to exonerate the personal estate, but they do not do so. The provision that the persons named as personal representatives of the deceased should be "administrators of his [the testator's] property, real and personal," does not have that effect. Inasmuch as the will was inartistically drawn it is difficult to find reasons for the use of the above phrase; but if it has any bearing on the question here, it would tend to show that the personal estate was not exonerated from payment of debts, otherwise power over his personal property would not have been given to his administrators. At most these words were perhaps intended to give his administrators power to collect the rents of real estate, and possibly to dispose of it; but that does not show intention to exonerate the personalty from payment of his debts.

It may seem to be what some of the courts have called a mockery if the gift to his brothers and sister is declared ineffective; but well established principles of law must be applied, though in particular cases a seeming injustice is done or hardship imposed. To determine testamentary intention according to rules of law is frequently very difficult. As Lord Eldon has said:

"After all, the question is not what the testator really meant (which can never be ascertained), but what he has authorized the court to say it is probable was his meaning."

The conclusion is, then, that the personal estate of the decedent was the primary fund for paying debts of the decedent, and as the proceeds thereof was applied to the payment of his debts, the gift of the personalty failed and the whole of the balance in the hands of the executors is due and payable to the guardian of John D. O'Donnell, and none of it to the brothers and sister of the testator.

Let a decree be entered accordingly.