THOMAS QUINBY, in equity, vs. JOHN FROST and another.

*Will, construction of. When real estate is to be applied in payment of debts.*

Ordinarily, the personal estate of a decedent is to be first applied in payment of his debts before resort is had to the realty; but real estate may be sold for this purpose without having used any part of the personal, where this course is evidently necessary in order to carry out the intent of the testator, as gathered from the whole of his will, though such sale be not expressly directed by any of its particular provisions.

IN EQUITY.

This is an amicable bill in equity, brought by Thomas Quinby, executor of the will of late George Frost, to determine the true construction of that instrument. The testator left real estate valued at nearly $20,000, its value consisting mainly of the wood and timber thereon, being the premises upon which he resided with his brother and sisters up to the time of his death. He and they were unmarried. He made his will July 8, 1859, and died August 13, 1865, aged eighty years. His sister Joanna was then 82, Abigail was 65, and his brother John (since deceased), 58. After the death of George Frost, it was found that his personal estate was barely sufficient to pay his debts, and that it was inadequate to the payment of debts and administration expenses. The particular question which the parties desired to have determined was, whether or not the executor should apply the personal estate to the payment of debts, or whether it should be kept intact, and its income applied to the use of the *cestuis que trust* named in the first and second clauses of the will, and the real estate be sold to pay debts, etc. Samuel Jordan was originally named as executor and trustee, but upon his declination the complainant succeeded to those trusts.

The first and second items of the will are these:

" First. My will is, that all my just debts and funeral charges shall, by my executor hereinafter named, be paid out of my estate, as soon after my decease as shall by him be found convenient.

"Second. I give, devise, and bequeath, to Samuel Jordan, of Westbrook, aforesaid, now the Post-master of the city of Portland, Esquire, and his heirs, all my estate, both real, personal, and mixed, upon and for the trusts, intents, and purposes, and with and subject to the powers and provisions hereinafter mentioned and expressed of or concerning the same ; that is to say, upon trust to pay the interest money, growing, arising, and by him (said trustee) received from the personal property and securities I may leave at my death in equal third parts to my two sisters, Joanna Frost and Abigail Frost, and my brother, John Frost, said interest to be paid them annually, share and share alike, during their natural lives, and upon the death of either of them, his or her share is to be paid to the survivors, and upon the death of two of them the whole interest money is to be paid to the survivor during his or her natural life, in manner above provided. Any and all the real estate of which I may be seized or possessed as my property at the time of my death, I order my said trustee, and authorize him to sell, dispose of, and convey, when and as soon as he shall deem proper for the interest of all concerned, at his sole discretion, and according to his own best judgment, and on credit with security, or for money, as he shall deem best. The proceeds of said sale I will and order my said trustee to dispose of and pay over in the following manner, to wit: to the children of my cousin, Nancy Seal, namely: Ellen Ward, Eunice Quinby Jordan, Mary Jane Porter, Thomas Seal, and William F. Seal, one thousand dollars each, and to John S. Seal and his wife the interest of one thousand dollars during their lives and during the life of the survivor of them ; said interest to be paid annually, and on the decease of both husband and wife, I will and order my said trustee to pay the principal sum of one thousand dollars to their children.

" I further will and order my said trustee to pay to Elizabeth S. Bennett, wife of Moses Bennett, Susan L. Hooper, wife of Robert Hooper, Catherine M. Rolfe, wife of Benjamin Rolfe, Andrew T. Clark, Thomas S. Clark, John M. Clark, and Charles Henry Clark, all children of my cousin, Elenor Clark, Sarah Norris,

daughter of my late cousin, Catherine Mahan, Jane S. Quinby, wife of Thomas Quinby, Emeline Hunt, wife of Henry Hunt, Frances E. Hobson, wife of Isaac Hobson, and Henry M. Brewer, all children of my late cousin, Jane Brewer, the sum of one thousand dollars to each and all of them; provided always, that said legacies of one thousand dollars each are not to be paid until the death of my said two sisters and brother, one and all of them.

" Until the aforesaid real estate shall be sold by my said trustee, as aforesaid, in the manner herein provided, I will and order him, my said trustee, to pay the income of said real estate to my two sisters and brother, in equal shares, and upon the death of one or more of them, to the survivors or survivor. Or should my said sisters or brother elect or prefer, I will and order him, the said trustee, to permit them or either of them to possess and occupy, reside upon, cultivate, and enjoy the same during their natural lives, and the natural life of the survivor or survivors; provided said real estate should so long remain unsold, and provided no strip or waste be made thereon.

"And upon the sale as aforesaid of said real estate, I will and order said trustee to pay my said sisters and brother, during their natural lives, and to each of them annually, the sum of three hundred dollars.

"I further will and order my said trustee, after the death of my said sisters and brother, and after the payment of all said legacies, and after paying him a full, generous, and ample compensation, both as trustee and executor of this my will, the rest of my estate remaining undisposed of to the trustees of the Westbrook Seminary, for the use of said Seminary."

*Nathan Webb*, for complainant, submitted the case without argument.

*Howard & Cleaves*, for respondents.

The complainant asks the aid of the court, by construction of the will of George Frost, to enable him to execute the trusts committed to him, as executor and trustee, by such will.

The intention of the testator must govern in the construction of his will, and should be the guide to his testamentary trustee and executor in executing the trusts.

The payment of the debts of the testator and funeral charges is enjoined in the first item of the will: To "be paid out of my estate," as soon after the decease of the testator as the executor might find it convenient.

But as these debts and charges were found to amount to as much or more than the personal property, the plaintiff, executor, seems to doubt as to from what portion of the estate he shall raise the funds to pay such debts, etc.

It is evident that the testator intended that his debts and funeral charges should not be a charge on his personal property, for that he designed in specific terms to be kept during the lives of his sisters and brother, as a fund of which they were to receive the annual income, in the manner and order as stated in the will.

Were it otherwise, and if the executor could appropriate the personal property and securities to the payment of such debts and charges, then he could defeat the intentions of the testator, in respect to the all-important and vital trust for the benefit of his sisters and brother.

These, it may be remarked, were all quite aged, poor, penniless, and with no ability to support themselves, and dependent upon the estate of the testator for support, after his death.

The testator was an aged man, and never married, but was regarded as wealthy, owning property to the amount of $25,000 to $30,000. The sisters were never married, and always resided with their brother, the testator. John Frost, their brother, married late in life, had no child, had lived with the testator most of his life, and was in feeble health, and has since died. The real estate was the old paternal homestead. It yielded no income, consisting of an old worn-out farm, and adjoining pine timber land—the timber constituting the principal value, and in fact being very valuable, but yielding no income.

The provision made by the testator respecting the income of the

personal property in trust, for the benefit of his sisters and brother, was, therefore, dominant and imperative, and left nothing to the discretion of the executor and trustee which might by possibility defeat or impair it.

It was the duty, therefore, of the executor to appropriate a portion of the real estate to the payment of the debts and charges, in order to sustain the first and most important trust for the benefit of the sisters and brother.

KENT, J. A testator may order his debts and the expenses of administration to be paid out of his personal, or out of his real estate, or out of both, or out of any particular piece or parcel. When he makes no distinct provision as to the specific kind of property, the general rule is understood to be that the debts shall be paid out of the personal property. But this rule is subject to the other well-established rule, that the will of the testator must govern, and that this will, or intention, may be gathered from the provisions of the whole testament, and may be inferred from the nature of the legacies, or devises, and the manifest object and purpose of the testator, and from all the circumstances of the case.

In this case, it is evident that the leading and controlling idea, purpose, and will of the testator, was to make sure and certain provisions for his two sisters and his brother, who lived with him on the farm, the real estate devised, and all the real estate of the testator. His first item is this: "First—My will is that all my just debts and funeral charges shall, by my executor hereinafter named, be paid out of my estate, as soon after my decease as shall by him be found convenient."

He then devises and bequeaths to a trustee (the executor also) all of his estate, real, personal, and mixed, without limitation or qualification, and without any allusion to the payment of his debts. He directs his trustee to pay to his two sisters and brother, in equal third parts, the interest money received "from the personal property and securities I may leave at my death, during their lives, and the life of the survivor or survivors." We have here a clearly

manifested intent, that these relatives should have the income of all the personal property during their lives. It turns out that the debts are nearly equal to the whole value of the personal property. Must the debts be paid from this property thus in the will devoted to the support of his aged relatives, and his sisters and brother? Was this the intention of the testator when he provided that his debts should be " paid out of his estate ?"

The provisions of the will in relation to the real estate lead to the same conviction as to the intent of the testator. The trustee has the whole estate devised to him, with power at his pleasure, and according to his best judgment to sell it all for cash or on credit. Out of the proceeds he orders a number of legacies of one thousand dollars each to be paid. But he has here carefully provided for the same three relatives, as first to be considered. Until a sale of the real estate, the whole income from it is to be paid to the brother and sisters. Or, if they prefer, they are to occupy and enjoy the same real estate, without charge. In case of sale, before any of the legacies of one thousand dollars can be paid, after a sale of the real estate, the same brother and sisters are to be paid each three hundred dollars annually, out of the money realized from the sale of the land.

The Westbrook Seminary is made residuary legatee.

On a full consideration of the whole tenor and spirit of this will, we are satisfied that it was the intention of this testator to place the whole of his personal property as a fund for the support of his aged near relatives, and that the whole should remain intact and undiminished, for that purpose. We think the estate named in the first item, from which the debts were to be paid, was the real estate, and that it should be charged to such real estate, or to the fund created by its sale. We refer to the case of *Fenwick* v. *Chapman*, 9 Peters, 471, in which is found the principles of law before alluded to, and numerous cases cited. The decree, therefore, is, that the true construction of the will of George Frost on the point presented in the bill is, that the debts and funeral expenses named in the first item of the will are to be wholly paid out

of the real estate, or from the proceeds of the sale thereof, and that the personal estate is to be retained and the income thereof applied to the use of the *cestuis que trust* named.

APPLETON, C. J.; WALTON, DICKERSON, and DANFORTH, JJ., concurred.